**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

KATIA GAUTHIER,
Individually and as Administrator of the Estate
of Peter Gauthier, and as Parent and Natural
Guardian of minors, D.G. and N.G.,

        Plaintiff,

    v.

HARD TO STOP LLC; RONALD BERNARD
SHINGLES; GREAT WEST CASUALTY
COMPANY; TOTAL QUALITY
LOGISTICS, LLC; SCOTTSDALE
INSURANCE COMPANY; OWNERS
INSURANCE COMPANY; AUTO-OWNERS
INSURANCE COMPANY; AUTO-OWNERS
SPECIALTY COMPANY,

        Defendants.

CIVIL ACTION NO.: 6:20-cv-93

## O R D E R

This action is before the Court on Defendant Total Quality Logistic, LLC's ("Total Quality") Motion to Dismiss.[1]  (Doc. 35.)  Plaintiff Katia Gauthier initiated this action in state court after her husband, Peter Gauthier, died due to injuries he sustained when his vehicle collided with a tractor-trailer driven by Defendant Ronald Bernard Shingles.  (See doc. 1-10.)  Defendants Hard to Stop LLC ("Hard to Stop") and Shingles subsequently removed the case to this Court. (Doc 1.)  Defendant Total Quality Logistics, LLC, then filed the at-issue Motion to Dismiss, arguing that Plaintiff failed to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) because her claims against it are preempted by the Federal Aviation

---

[1]  The Court also addresses a more recently filed Consent Motion to Dismiss all of the other Defendants in the case, see Discussion Section IV, infra, and **GRANTS** that Consent Motion, (doc. 68).

Administration Authorization Act, 49 U.S.C. § 14501(c)(1) ("FAAAA"), and, alternatively, Plaintiff has failed to allege sufficient facts to support her theories of recovery. (Doc. 35.) For the following reasons, the Court **GRANTS** Defendant Total Quality's motion to dismiss. (Id.)

## BACKGROUND

This action arises from the death of Peter Gauthier, who was killed after his vehicle collided with a tractor-trailer driven by Defendant Ronald Bernard Shingles. (See doc. 27.) According to the First Amended Complaint, Total Quality is a shipment broker who selected and arranged for Hard to Stop, a common carrier, and/or Ronald Shingles, one of Hard to Stop's employees/agents, to pick up a load of goods from a poultry plant in Claxton, Georgia. (Id. at pp. 5–6.) On the night of May 28, 2020, Shingles was driving on a highway to pick up the load in a tractor-trailer owned by Hard to Stop. (Id.) After Shingles missed the entrance to the poultry plant, he attempted to perform a U-turn and, in the process, obstructed multiple lanes of traffic from both directions. (Id. at pp. 6–7.) Peter Gauthier, who was traveling on the same highway but in the opposite direction, collided with the tractor-trailer. (Id. at pp. 7–8.) Mr. Gauthier died as a result of his injuries. (Id. at p. 8.)

On August 20, 2020, Plaintiff filed a wrongful death action in the State Court of Bulloch County on behalf of herself, Mr. Gauthier's estate, and her two daughters against Defendants Shingles, Hard to Stop, and Great West Casualty Insurance Company ("Great West"), Hard to Stop's liability carrier. (Doc. 1-10, pp. 2–14.) The crux of Plaintiff's initial complaint was that the negligence of Defendants Shingles and Hard to Stop proximately caused her husband's death. (See id.) Defendants Shingles and Hard to Stop subsequently removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1332(c)(1). (Doc. 1, p. 10.) Plaintiff then filed

a First Amended Complaint, which refined and supplemented the allegations related to her existing claims and added claims against Defendant Total Quality.  (Doc. 27.)

The First Amended Complaint contains six counts: (1) a claim of negligence against Defendants Shingles, Hard to Stop, and Total Quality (Count I); (2) a claim of negligent selection, hiring, and retention against Defendants Hard to Stop and Total Quality (Count II); (3) a claim of negligent maintenance against Hard to Stop and Total Quality (Count III); (4) a direct action against Great West pursuant to O.C.G.A § 40-1-112 (Count IV); (5) a request for punitive damages from all Defendants pursuant to O.C.G.A. § 51-12-5.1 (Count V); and (6) a request for reasonable attorneys' fees and costs from all Defendants pursuant to O.C.G.A. § 13-6-11 (Count VI).  (Id. at pp. 8–20.)  With regard to movant Total Quality, in Count I, Plaintiff alleges that Total Quality is liable for Shingles' negligent operation of the tractor-trailer under theories of "agency and/or respondeant superior" and based on its "joint venture [with Hard to Stop] with respect to the pickup and delivery of the load at the Claxton poultry plant."  (Id. at pp. 8–11.)  In Count II, Plaintiff alleges that Total Quality breached various common law duties, including its duty "to ensure that the motor carriers with whom it arranged transportation of goods were reasonably safe and complied with all laws and industry standards concerning the safe operation and maintenance of commercial motor vehicles."  (Id. at p. 13; see also id. at pp. 11–15.)  Lastly, in Count III, Plaintiff alleges that Total Quality is liable for Hard to Stop's negligent maintenance of the tractor-trailer involved in the accident by virtue of their aforementioned "joint venture."  (Id. at p. 17.)

Total Quality filed the at-issue Motion to Dismiss arguing that Section 14501(c)(1) of the FAAAA preempts Plaintiff's tort claims against it and, alternatively, that Plaintiff has failed to

allege sufficient facts to state a claim upon which relief may be granted.[2]  (See doc. 35-1, pp. 3–7.)  Plaintiff filed a Response, (doc. 41), and Total Quality filed a Reply, (doc. 43).

## STANDARD OF REVIEW

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft, 556 U.S. at 678.  Moreover, a complaint that "tenders naked assertions devoid of further factual enhancement" or solely pleads facts which are "merely consistent with a defendant's liability" fails to state a claim.  Id. (internal quotations and citations omitted).

"Generally, the existence of an affirmative defense will not support a motion to dismiss.  Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the

---

[2]  Although the at-issue Motion to Dismiss is titled "Motion to Dismiss the First Amended Complaint," Total Quality appears to only request the dismissal of the claims asserted against it.  (See doc. 35-1, pp. 1–2 ("Notwithstanding [Total Quality]'s compassion for Plaintiff's situation, it must insist on being dismissed from this lawsuit. . . .  Plaintiff has failed to state any negligence-based claims *against [Total Quality]* . . . .") (emphasis added).)  Therefore, the Court will address only whether Plaintiff has failed to state a claim against Total Quality, not any other defendant.

complaint." <u>Quiller v. Barclays Am./Credit, Inc.</u>, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd*, 764 F.2d 1400 (11th Cir. 1985) (en banc).  Federal preemption is an affirmative defense.  <u>See</u> <u>Geddes v. Am. Airlines, Inc.</u>, 321 F.3d 1349, 1352 (11th Cir. 2003); <u>see also</u> <u>Met. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit.").  Thus, dismissal under Rule 12(b)(6) is appropriate only if "the defense of federal preemption [is] apparent on the face of the complaint." <u>Quiller</u>, 727 F.2d at 1069.

## DISCUSSION

### I.   Ordinary Negligence (Count I) and Negligent Maintenance (Count III)

Plaintiff alleges that Total Quality is vicariously liable for Defendant Shingles' negligent operation of the tractor trailer based on theories of agency and joint venture and that Total Quality is liable for Hard to Stop's negligent maintenance of the tractor trailer based on a theory of joint venture.  (Doc. 27, pp. 8–11, 16–17.)  Total Quality argues that these claims should be dismissed because Plaintiff has failed to allege sufficient facts to support these theories of liability.  (Doc. 35-1, pp. 7–11.)  The Court agrees.  For the reasons stated below, the Court dismisses Counts I and III of the Complaint with respect to Total Quality.  (Doc. 27.)

#### A.   Agency/ Respondeat Superior

Plaintiff alleges that "Defendant Total Quality . . . is liable for the negligent acts of Defendant Shingles under theories of agency and/or respondent [sic] superior."  (Doc. 27, p. 10.)  Under Georgia law, "[f]or the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent."  O.C.G.A. § 51-2-1(a).  "*Respondeat superior* is a doctrine that dictates when the principal is liable for its agent's torts."  <u>Est. of Miller v. Thrifty Rent-A-Car Sys., Inc.</u>, 637 F. Supp. 2d 1029, 1037 (M.D. Fla. 2009) (citing Restatement (Third)

of Agency §§ 2.04, 7.03, 7.07–.08).   An agency relationship exists in Georgia "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10–6–1.  "The historical test applied by Georgia courts [to determine the existence of an agency relationship] has been whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract."  New Star Realty, Inc. v. Jungang PRI USA, LLC, 816 S.E.2d 501, 508 (Ga. Ct. App. 2018); see Pizza K v. Santagata, 547 S.E.2d 405, 407 (Ga. Ct. App. 2001) (an agency relationship exists where alleged principal "exercise[s] supervisory control over the daily activities of [the alleged agent]").  Therefore, in order to state claim for negligence based on respondeat superior, a plaintiff must plausibly allege that the purported principal "controlled the time, manner, and method" of the purported agent's activities or operations.  Id.; see Amin v. Mercedes-Benz USA, LLC, 349 F. Supp. 3d 1338, 1357–58 (N.D. Ga. 2018) (determining the sufficiency of plaintiffs' agency allegations by analyzing the facts "concerning the depth and breadth of [the alleged principal's] purported control over [the alleged agent]").

The allegations in the First Amended Complaint in support of Plaintiff's agency theory are scant.  Plaintiff alleges that "Defendant Shingles was acting as an employee or agent for Hard to Stop . . . and/or Total Quality . . . at all relevant times." (Doc. 27, p. 5.)  However, a "bare assertion of the existence of an agency relationship, when made by an outsider to the alleged relationship, is not a statement of fact, but merely an unsupported conclusion of law."  Thornton v. Carpenter, 476 S.E.2d 92, 94 (Ga. Ct. App. 1996); see S.B. v. Tenet Healthcare Corp., 732 F. App'x 721, 724 (11th Cir. 2018) (affirming district court's grant of motion to dismiss where plaintiff "provided only conclusory allegations that Tenet 'utilized Clinica as its agent,' [and] that 'Clinica's owner

and operators . . . acted as agents of the hospitals'").  Furthermore, although Plaintiff baldly claims that Total Quality and Hard to Stop "controlled the time, manner and method of the actions of Defendant Shingles at all relevant times," this allegation is conclusory.  (Doc. 27, p. 6); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . .") (internal quotations omitted).  Plaintiff also alleges that "Defendant Shingles was to take . . . product and deliver it to a customer for Claxton Poultry at the express direction and under the control of [Total Quality]" because Total Quality "selected and arranged for Defendants Shingles and/or Hard Stop [sic] to pick up the load and deliver it." (Id. at p. 6).  However, these allegations do not plausibly show that Total Quality controlled "the manner in which [Defendant Shingles] moved the freight." Castleberry v. Thomas, No. 5:20-CV-396 (MTT), 2020 WL 7048280, at *4 (M.D. Ga. Dec. 1, 2020);  see McLaine v. McLeod, 661 S.E.2d 695, 700 (Ga. Ct. App. 2008)) (finding that a freight broker was not vicariously liable for a motor carrier's driver's negligence where the broker's "role was limited to telling [the driver] when and where to pick up and deliver cargo").  Indeed, Plaintiff has failed to allege that Total Quality exercised (or had the right to exercise) the kinds of control which characterize an agency relationship between a freight broker and a motor carrier or its employees.[3]  See, e.g., Castleberry, 2020 WL 7048280, at *3 (finding no agency relationship between Total Quality and an employee-driver of its selected motor carrier where the "evidence showed that [Total Quality] did not tell the driver which routes to take, did not provide equipment to the driver, did not provide insurance for the driver, and did not 'exercise any control or input over the time, method and manner of [the driver's] work and driving'") (quoting McLaine, 661

---

[3]  Plaintiff expressly alleges that "Defendant Shingles was an employee or agent of Hard to Stop LLC." (Doc. 27, p. 10.)

S.E.2d at 338).  Based on the foregoing, Plaintiff has failed to allege sufficient facts to raise a plausible inference that Defendant Shingles was Total Quality's agent.

### B.        Joint-Venture

Plaintiff alternatively alleges that Total Quality is liable for Defendant Shingles' negligence based upon its "joint venture" with Hard to Stop "with respect to picking up the subject load at Claxton Poultry and subsequently delivering the load to the end customer."  (Doc. 27, p. 10.)  Plaintiff also relies upon a joint venture theory to impose liability on Total Quality for Hard to Stop's alleged failure to properly maintain the tractor-trailer which struck Mr. Gauthier.  (Id. at p. 17.)  "A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control.  Without the element of mutual control, no joint venture can exist."  Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 756 (Ga. Ct. App. 2008).  Therefore, in order to state a claim for negligence based on a joint venture theory, a plaintiff must plausibly allege that the alleged venturers "had the right to direct and control the conduct of [one another] in the activity causing the injury."  Id.

Total Quality argues that "Plaintiff has failed to state a negligent maintenance claim against [Total Quality] under its joint venture theory" because she "baldly asserts a joint venture relationship without any factual support."  (Doc. 35-1, p. 10.)  The Court agrees.  Plaintiff alleges that "Hard to Stop . . . and Total Quality . . . were engaged in a joint venture with respect to picking up the subject load at Claxton Poultry and subsequently delivering the load to the end customer."  (Doc. 27, p. 17.)  This allegation is conclusory and, therefore, is insufficient to state a claim for negligence based on a joint venture theory.  See Fojtasek v. NCL (Bahamas) Ltd., 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009) ("In his Complaint, Plaintiff has merely alleged in conclusory fashion that Defendant and Tabyana Tours were engaged in a joint venture.  As such, Count V fails to state

a claim upon which relief may be granted and must be dismissed.") (internal citations omitted); see also Landers-Scelfo v. Corp. Off. Sys., Inc., 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005) ("A bald assertion that a . . . joint venture exists is not sufficient to plead the existence of such a relationship.").   Additionally, although Plaintiff alleges that "[as] a result of the joint venture, Defendant Shingles was directed by Hard to Stop . . . and Total Quality . . . to make the subject trip," Plaintiff has not alleged any facts which show that Total Quality and Hard to Stop shared joint control over Defendant Shingles with respect to that trip.  (Doc. 27, p. 17); see Bridgewater v. Carnival Corp., No. 10-22241-CIV, 2011 WL 976467, at *2 (S.D. Fla. Mar. 2, 2011) (granting motion to dismiss on joint venture negligence claim, in part, because "Plaintiff has not pleaded that both Defendant Rapsody and Defendant Carnival had joint control over the operations at issue"); see also Rossi v. Oxley, 495 S.E.2d 39, 82–83 (Ga. 1998) (holding, as a matter of law, that joint venture did not exist between doctors subject to an "on-call agreement" absent evidence that the doctors controlled one another's professional judgment in treating the plaintiff).   Merely alleging that a purported joint venturer directed the activity at issue is inadequate to show the joint control over that activity necessary to establish a joint venture.  See Bridgewater, 2011 WL 976467, at *2 ("Plaintiff has simply alleged that Carnival arranged Plaintiff's cruise.  Nowhere, however, has Plaintiff alleged any factual basis for believing that joint control of the underlying excursion was shared by Defendants Rapsody and Carnival.").  Thus, the Court finds that Plaintiff has failed to plausibly allege that Hard to Stop and Total Quality were engaged in a joint venture pursuant to which liability may be imputed to Total Quality.

Based on the foregoing, Plaintiff has inadequately pled facts to support her agency and joint venture theories of liability, and Counts I and III therefore fail to state a claim.  Accordingly, the Court **DISMISSES** those claims with respect to Total Quality.

## II.     Negligent Hiring and Retention (Count II)

### A.  Plaintiff has alleged sufficient facts to state a claim for Negligent Hiring and Retention.

Plaintiff claims that Total Quality "negligently hired, contracted with, and/or retained Defendant Shingles as a driver and failed to exercise ordinary care to determine his fitness for the task of operating a commercial motor vehicle."  (Doc. 27, pp. 11–12.)  In Georgia, "[a] claim for negligent hiring, retention or supervision brought pursuant to Georgia law arises when an employer negligently hires, retains or supervises an employee and that employee subsequently harms the plaintiff."  Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1299 (N.D. Ga. 2001).  In order to establish such a claim, the plaintiff must allege that the employer "knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury." Id. (citing Odom v. Hubeny, Inc., 345 S.E.2d 886, 888 (Ga. Ct. App. 1986)); see Couick v. Morgan, No. 4:10-cv-153, 2010 WL 5158206, at *8 (S.D. Ga. Dec. 14, 2010) (noting that the employees' "tendencies to engage in certain behavior" must be "*relevant to* the injuries allegedly incurred by the plaintiff") (internal quotations omitted).

Total Quality contends that the "sole factual allegation" supporting Plaintiff's negligent hiring claim against it is that "Total Quality . . . selected Shingles and/or [Hard to Stop] to pick up and deliver the product shipment."  (Doc. 35-1, p. 9 (quoting doc. 27, p. 10).)  That is not so.  In Count II of the First Amended Complaint, Plaintiff alleges that Total Quality "knew or should have known of prior wrecks, dangerous behavior, and traffic violations by Defendant Shingles, which include multiple speeding tickets, driving with a suspended license on multiple occasions, battery, and constructive possession of controlled substances."  (Doc. 27, p. 12; see also id. at p. 14.)  Total Quality argues that "assertions that a party knew or should have known an actor's 'propensity to engage in the conduct which caused [the] injury' are legal conclusions."  (Doc. 35-

1, p. 10 (quoting Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (2011).)  While that is true, this Court has clarified that where a plaintiff additionally alleges "facts that would lead a reasonable person to believe that [the employee] had a propensity to commit [the type of misconduct alleged]" or facts that "display[] any tendencies that [the employer] knew or should have known about," plaintiff states a sufficient claim for negligent hiring.   Chartis Ins. Co. of Can. v. Freeman, No. CV 111-193, 2013 WL 12121864, at *4 (S.D. Ga. Mar. 18, 2013).  Here, Plaintiff alleges that Defendant Shingles was an "unsafe and incompetent motor carrier" based on his prior instances of misconduct, such as "multiple speeding tickets, driving with a suspended license on multiple occasions, battery, and constructive possession of controlled substances." (Doc. 27, pp. 12, 14.) Additionally, Plaintiff alleges that Total Quality "[f]ail[ed] to perform or improperly perform[ed] background, driving record, physical fitness to drive and/or character investigations" which would have revealed this information.  (Id. at p. 14.)  These allegations, if proven, should have put Total Quality on notice that Defendant Shingles had a tendency or propensity to engage in behaviors which place other drivers at risk.  These behaviors are relevant to and could be found to have a causal connection with the alleged cause of Mr. Gauthier's death because Plaintiff has alleged the accident was proximately caused by, inter alia, Defendant Shingles' "negligent, reckless, and illegal U-turn," which "obstruct[ed] multiple lanes of traffic."  (Id. at pp. 7, 9); see Leo v. Waffle House, Inc., 681 S.E.2d 258, 262 (2009) ("[A]n employee's tendencies to engage in certain behavior [must be] relevant to the injuries allegedly incurred by the plaintiff.").   Accordingly, the Court finds that Plaintiff has alleged sufficient facts to state a claim for negligent hiring and retention.  See Couick, 2010 WL 5158206, at *8 (holding that plaintiff stated a claim for negligent supervision and retention of a supervisor alleged to have retaliated against the plaintiff because the plaintiff alleged facts which, if proved, "should have put Defendants on notice that [the supervisor]

had a tendency to engage in misconduct" which made retaliation more likely); see also Lawrence v. Christian Mission Ctr. Inc. of Enter., 780 F. Supp. 2d 1209, 1219 (M.D. Ala. 2011) (finding that plaintiff stated claim for negligent supervision against an employee alleged to have been incompetent where plaintiff "adequately pled a causal connection between the harm incurred and the incompetence of the staff member"); cf. Chartis Ins. Co., 2013 WL 12121864, at *4 ("Nowhere . . . does Chartis allege that Regent actually knew that Freeman created fictitious scale tickets or allege any facts that would lead a reasonable person to believe that Freeman had a propensity to commit fraud.  Further, Chartis has not alleged that Freeman displayed any tendencies that Regent knew or should have known about. . . .  Accordingly, Regent's motion to dismiss Chartis's negligent supervision claim . . . is GRANTED."); Novare Grp., Inc., 718 S.E.2d at 310 ("Purchasers have not alleged that Brokers displayed any tendencies to disregard the script that Developers knew or should have known about. . . .  Therefore, the trial court correctly found that Purchasers did not sufficiently plead a cause of action against the Developers for negligent supervision[.]").

**B.  Plaintiff's Negligent Hiring Claim is Preempted Under the FAAAA.[4]**

Total Quality argues that Plaintiff's negligent hiring claim should, nonetheless, be dismissed because it is preempted by Section 14501(c)(1) of the FAAAA.  (Doc. 35-1, pp. 3–7; see also doc. 43, pp. 2–15.)  The FAAAA "contains a broad preemption provision significantly curtailing state authority to regulate transportation by motor carriers."  Radiant Glob. Logistics, Inc. v. Cooper Wiring Devices, Inc., No. 1:11-cv-4254-SCJ, 2012 WL 13013638, at *3 (N.D. Ga.

---

[4]  The parties' briefs address whether the FAAAA preempts all of Plaintiff's claims against Total Quality.  (See generally doc. 35-1; doc. 41; doc. 43.)  However, because the Court dismissed Counts I and III for failure to state a claim, see Discussion Section I, supra, the Court will address only whether the FAAAA preempts Count II, Plaintiff's negligent hiring claim.

Sept. 21, 2012) (citing 49 U.S.C. § 14501).  Section 14501(c)(1) prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any private motor carrier, broker, or freight forwarder with respect to the transportation of property."[5]  49 U.S.C. § 14501(c)(1).  Section 14501(c)(1) was modeled after the preemption provision of the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1).  See Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., 972 F. Supp. 665, 669 (N.D. Ga. 1997) ("[T]he preemption provision of the FAAAA . . . employs identical language to the preemption provision of the ADA."); see also H.R. Rep. No. 103–677, at 83 (1994) (Conf. Rep.), as reprinted in 1994 U.S.C.C.A.N. 1715, 1755 ("[Section 14501(c)(1)] is identical to the preemption provision deregulating air carriers . . . and is intended to function in the exact same manner with respect to its preemptive effects.").  Like the ADA's preemption provision, Section 14501(c)(1) utilizes the phrase "related to," which the United States Supreme Court has interpreted to express a "broad pre-emptive purpose."  Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992); see id. ("The ordinary meaning of [the] words ['relating to'] is a broad one— 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association

---

[5]  The full text of Section 14501(c)(1) reads

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

Section 14501(c)(1) was originally codified at 49 U.S.C. § 11501(h)(1) but was recodified at 49 U.S.C. § 14501(c)(1) when Congress enacted the Interstate Commerce Commission Termination Act of 1995 ("ICCTA").  See Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972 F. Supp. 665, 667 (N.D. Ga. 1997); see id. at 667 n.1 (citing Pub. L. No. 104–88, § 103, 109 Stat. 802, 899 (effective Jan. 1, 1996)).  Some courts refer to preemption under Section 14501(c)(1) as "FAAAA preemption" while others call it "ICCTA preemption."  Compare Radiant Glob., 2012 WL 13013638, at *3 (using "ICCTA"), with Deerskin, 972 F. Supp at 667 (using "FAAAA").

with or connection with[]'—and the words thus express a broad pre-emptive purpose.") (internal citations omitted) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).  Indeed, the Supreme Court has stated that the phrase "related to" in Section 14501(c)(1) "embraces state laws having a connection with or reference to carrier 'rates, routes, or services,' whether directly or indirectly." Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 260 (2013) (internal quotation omitted). Notwithstanding its breadth, the Supreme Court has said that Section 14501(c)(1)'s preemptive scope is curtailed by the phrase "with respect to the transportation of property," which is not included in the ADA.  See id. at 261 (quoting Columbus v. Ours Garage & Wrecker Service, Inc., 536 U.S. 424, 449 (2002)); see generally 49 U.S.C. § 41713(b)(1).  Thus, in order to be preempted by the FAAAA, state laws or enforcement actions must (1) affect a broker's prices, routes, or services in more than a "tenuous, remote, or peripheral" manner and (2) concern "the transportation of property."  See Dan's City Used Cars, 569 U.S. at 261 ("[I]t is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'").

The parties dispute whether personal injury claims alleging that a broker negligently selected a certain motor carrier to transport property are preempted by Section 14501(c)(1).  (See generally docs. 35-1, 41, 43.)  The Supreme Court has yet to address this issue.  Plaintiff argues that "common law tort claims against brokers arising from personal injuries suffered in motor vehicle collisions are not the type of state regulation preempted by the FAAAA."[6]  (Doc. 41, p.

---

[6]  Plaintiff bases her argument primarily on ADA cases which have held that personal injury suits and employment claims related to safety are not preempted by the ADA.  (See doc. 41, pp. 11–15.)  For example, Plaintiff cites Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1260 (11th Cir. 2003), and Amerijet Int'l, Inc. v. Miami-Dade Cnty, 627 F. App'x 744, 751 (11th Cir. 2015), for the proposition that "the ADA [does not] preempt[] state law claims relating to safety."  (Id. at p. 11.)  However, these cases are inapposite. Neither Branche nor Amerijet International involved "state claims related to safety."  Branche involved a retaliatory discharge claim brought against an air carrier pursuant to Florida's Whistleblower Act, see 342 F.3d at 1250–52, and Amerijet International involved a request to enjoin the enforcement of a living wage

15.)  While it is true that some courts have categorically held that the FAAAA does not preempt state law tort claims against brokers, see, e.g., Ciotola v. Star Transp. & Trucking, LLC, 481 F. Supp. 3d 375, 390 (M.D. Pa. 2020) ("Pennsylvania's tort law . . . is not preempted by the FAAAA."), most courts treat FAAAA preemption as a fact-intensive inquiry which depends on the nature of the plaintiff's allegations and the underlying claims alleged.  See, e.g., Bailey v. Bell-Rich Transp., LLC, No. 3:19-cv-461-J-34JBT, 2020 WL 3440585, at *6 (M.D. Fla. June 23, 2020) ("To determine whether the FAAAA preempts a plaintiff's claims, courts look to the allegations in the plaintiff's complaint, especially the specific causes of action asserted and the role alleged to have been played by the defendant in the shipping transaction in question."); Lopez v. Amazon Logistics, Inc., 458 F. Supp. 3d 505, 513 (N.D. Tex. 2020) ("In determining whether a tort claim falls within the ambit of preemption provisions, courts frequently look to the facts underlying the claim or the specific nature of the tort claim alleged to determine whether it 'relates to'

---

ordinance against an air carrier, see 627 F. App'x at 745–47.  In both cases, the United States Court of Appeals for the Eleventh Circuit held that the regulations at issue were outside the scope of the ADA because they were insufficiently related to "the service of an air carrier;" not because all tort claims related to safety are outside the scope of the ADA.  See Branche, 342 F.3d at 1261 ("[B]ecause Branche's state Whistleblower Act claim is fundamentally an employment discrimination claim that does not implicate any arena in which airlines compete, we conclude based on the foregoing analysis that his claim does not relate to the services of an air carrier within the meaning of [Section] 41713, and consequently is not pre-empted under that section."); Amerijet Int'l, 627 F. App'x at 750 ("In sum, the cargo handling work Amerijet performs for other airlines at MIA does not constitute a 'service' within the meaning of the ADA's preemption provision. We therefore affirm the district court's ruling that the [living wage ordinance], as applied to such cargo handling services, is not preempted by the ADA.").  Additionally, although Branche stated in dicta that "state law personal injury claims are not preempted" by the ADA, its reasoning—as well as the reasoning of other courts reaching the same conclusion in cases cited by Plaintiff—was influenced by the ADA's requirement that air carriers maintain liability insurance.  See e.g., Branche, 342 F.3d at 1258; Charas v. Trans World Airlines, Inc., 160 F.3d 1259, 1265 (9th Cir. 1998) ("[T]hat Congress did not intend [for the ADA] to preempt all state tort claims is evident from [the fact that] . . . airlines are still required to maintain insurance . . . .") (citing 49 U.S.C. § 41112(a)); see also Gillum v. High Standard, LLC, No. SA-19-CV-1378-XR, 2020 WL 444371, at *4 n.5 (W.D. Tex. Jan. 27, 2020) (collecting cases). Congress included a similar requirement in the FAAAA for motor carriers and freight forwarders but *not* for brokers.  See 49 U.S.C. § 13906(a)(1), (b)(1)-(2), (c)(3).  Therefore, the Court finds little guidance in these cases relied upon by Plaintiff.

'services.'").  Indeed, courts in this circuit and others have held that Section 14501(c)(1) preempts negligence-based claims against brokers or motor carriers when the subject matter is sufficiently "related to" their prices, routes, or services.  See e.g., Aegis Syndicate 1225 at Lloyds of London v. FedEx Custom Critical, Inc., No. 20-23722-CIV-DIMITROULEAS, 2021 WL 5014102, at *5 (S.D. Fla. June 28, 2021) ("This Court finds that Plaintiff's negligence claim is aimed at the core of FedEx's services, arranging for the movement of goods, and that it more than tenuously relates to the transportation of goods.  As such, Plaintiff's negligence claim against FedEx is preempted by the FAAAA."); Fed. Ins. Co. v. Nolan Transp. Grp., Inc., No. 1:15-CV-00344-CC, 2016 WL 9000042, at *3 (N.D. Ga. Oct. 12, 2016) ("[T]he Court finds that Plaintiff's negligence claim falls squarely within the scope of [Section 14501(c)(1)] and is due to be dismissed with prejudice."); Bailey, 2020 WL 3440585, at *6 n.9 (collecting cases from other circuits applying FAAAA preemption to negligent hiring claims); see also Lopez, 458 F. Supp. 3d at 513 ("The key question here is whether section 14501(c)(1)'s text—preempting state laws that 'relate to' a broker's 'services' 'with respect to transportation'—encompasses Plaintiffs' common law negligence claim.").

This fact-specific approach is consistent with the plain language of Section 14501(c)(1), "which necessarily contains the best evidence of Congress' pre-emptive intent."  Dan's City Used Cars, 569 U.S. at 260.  Section 14501(c)(1) expressly provides, in relevant part, that states shall not "enact or enforce any law, rule, regulation, standard, or *other provision having the force and effect of law* related to a price, route, or service of . . . any . . . broker . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1) (emphasis added).  It is well-established that the phrase "other provisions having the force and effect of law" includes common law rules.  See Northwest, Inc. v. Ginsberg, 572 U.S. 273, 281–82 (2014) (noting that common law rules are

frequently called "provisions" and clearly have the "force and effect of law"); Gillum, 2020 WL 444371, at *3 (noting that courts "share an understanding that common law negligence claims embody state laws that *may* be preempted" by the FAAAA); see also Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) ("Laws of general applicability, even those consistent with federal law, are preempted if they have the 'forbidden significant effect' on rates, routes or services.") (citing Morales, 504 U.S. at 386).  Indeed, "[a]voiding the creation of . . . 'state enforced rights' is part of the reason the Supreme Court has held that state law tort actions [may be] preempted" by the ADA.  Deerskin, 972 F. Supp. at 673 (citing Morales, 504 U.S. at 388). Therefore, negligence claims against brokers are preempted by Section 14501(c)(1) when their subject matter is "related to" the broker's services and concerns the transportation of property.  See id. at 672 ("[A] state law tort action against a carrier, where the subject matter of the action is related to the carrier's prices, routes, or services, is a *state enforcement action* having a connection with or reference to a price, route, or service of any motor carrier . . . for purposes of the FAAAA. . . .  Accordingly, any such state law tort action is preempted by the FAAAA.") (emphasis added). As indicated above, a claim is "related to" the services of a broker when it has a "connection with, or reference" thereto.  See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008) (quoting Morales, 405 U.S. at 384).  Such a connection exists where a claim has a "significant impact" on a broker's services.  Id at 375.  A "broker" is a person "selling, providing, or arranging for transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).  While the term "services" is not expressly defined, the term "transportation" is defined to include "services related to [the movement of passengers or property], including arranging for, receipt, delivery, . . . and interchange of passengers and property."  49 U.S.C. § 13102(23)(B).  Additionally, the Eleventh Circuit has stated that "'services' generally represent a bargained-for or anticipated provision of

labor from one party to another." Branche, 342 F.3d at 1256; see id. at 1256–59 (adopting the broad definition of "services" set forth by the Fifth Circuit Court of Appeals in Hodges, 44 F.3d at 336). Therefore, Section 14501(c)(1) preempts negligence claims which are sufficiently connected to or have a significant impact on brokers' core bargained-for services: arranging for the transportation of property. See Ga. Nut Co. v. C.H. Robinson Co., No. 17 C 3018, 2017 WL 4864857, at *3 (N.D. Ill. Oct. 26, 2017) ("[S]ervices of a freight broker . . . are focused on arranging how others will transport the property; these services, therefore, fall within the scope of the FAAAA preemption."); see also Finley v. Dyer, No. 3:18-CV-78-DMB-JMV, 2018 WL 5284616, at *5 (N.D. Miss. Oct. 24, 2018) ("[A] negligence claim is 'related to' a 'service' when the claim is centered on or derives from a bargained-for or anticipated provision of labor from a broker or other protected carrier.") (internal quotations omitted).

> **(1)    Plaintiff's Negligent Hiring Claim Is Within the Scope of Section 14501(c)(1) because it is "Related To" Total Quality's Brokerage Services.**

Total Quality argues that Count II falls within Section 14501(c)(1)'s purview because it "seek[s] to enforce state tort laws against [it] that relate to [its] price, route, or service." (Doc. 35-1, pp. 6–7 (internal quotations omitted).) The Court agrees. Plaintiff expressly alleges that Total Quality was the "shipment broker . . . which selected and arranged for Defendants Shingles and/or Hard to Stop to pick up the load and deliver it." (Doc. 27, p. 6; see also doc. 41, pp. 3–4.) Furthermore, in Count II, Plaintiff alleges that Total Quality, as a freight broker, owed the following duties: (1) "to investigate and only select and contract with safe and competent contractors and motor carriers to transport goods in interstate commerce"; (2) "not to hire or retain drivers it knew or should have known posed a risk of harm to others"; (3) to arrange for the transport of property in a commercial motor vehicle "in a reasonably prudent manner"; and (4) "to

ensure that the motor carriers with whom it arranged transportation of goods were reasonably safe and complied with all laws and industry standards concerning the safe operation and maintenance of commercial motor vehicles."[7]   (Doc. 27, pp. 11, 13.)   According to Plaintiff, Total Quality breached these duties, in part, by "[h]iring and retaining Shingles and/or Hard to Stop, despite its subpar safety, maintenance, and driving record, which was or should have been known to Total Quality" and by "[f]ailing to perform or improperly performing background, driving record, physical fitness to drive and/or character investigations that would have revealed Shingles and/or Hard to Stop was an unsafe and incompetent motor carrier."  (Id. at pp. 14–15.)

These allegations are directly related to the "core service provided by [Total Quality]— hiring motor carriers to transport shipments"—because they are based entirely upon Total Quality's decision to select Hard to Stop as the motor carrier.  Volkova v. C.H. Robinson Co., No. 16 C 1883, 2018 WL 741441, at *3 (N.D. Ill. Feb. 7, 2018); see Miller v. C.H. Robinson Worldwide, Inc., 976 F.3d 1016, 1024 (9th Cir. 2020) ("Because Miller's negligence claim seeks to interfere at the point at which C.H. Robinson 'arrang[es] for' transportation by motor carrier, it is directly 'connect[ed] with' broker services. . . ."); see also Finley, 2018 WL 5284616, at *5 ("Elizabeth alleges claims derived from Cornerstone's selection of a freight carrier, an action which indisputably is a bargained-for or anticipated provision of labor from a freight broker. Because Elizabeth's claims derive from a broker's service, this Court concludes that they are 'related to' such a service.") (internal quotations and citations omitted); Aegis Syndicate, 2021 WL 5014102, at *5 ("Here, Plaintiff's negligence claim asserts that FedEx was negligent in arranging for the movement of property . . . .  This Court finds that Plaintiff's negligence claim is aimed at the core of FedEx's services, arranging for the movement of goods, and that it more than

---

[7]  Plaintiff does not allege that Total Quality undertook these duties pursuant to its contract with Hard to Stop.  (See generally doc. 27.)

tenuously relates to the transportation of goods.  As such, Plaintiff's negligence claim against FedEx is preempted by the FAAAA.").  Furthermore, Count II has an impermissible significant and direct impact on Total Quality's services and prices because it seeks to impose heightened (and potentially costly) common law duties to investigate the motor carriers with which it contracts.  See Deerskin, 972 F. Supp. at 673 ("[S]tate law tort claims . . . [are] preempted if they [are] based on any state-imposed obligations external to a contract . . . .").  Indeed, courts in this circuit and others have held that negligent hiring claims asserted against a freight broker which are based upon duties external to the contract between the broker and motor carrier are "related to" brokerage services.  See Nat'l Union Fire Ins. Co. v. Nolan Transp. Grp., No. 1:18-CV-04743-JPB, 2020 WL 11191833, at *3 (N.D. Ga. Mar. 17, 2020) ("Plaintiffs claim Defendant was negligent, by, among other things, failing to adequately verify that ECA carried liability insurance that would compensate [Plaintiffs] if it failed to deliver the shipment. . . .  Because verification of liability insurance is related to the service provided by Defendant as a motor broker, Section 14501(c)(1) preempts the state law negligence claim."); see also Krauss v. IRIS USA, Inc., No. CV 17-778, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018) ("In essence, the plaintiffs allege that C.H. Robinson should have used a 'heightened and elaborate' process of selecting carriers. Such a heightened process, of course, would necessarily impact directly upon [C.H. Robinson's] services and pricing.  Given that the claim relates to C.H. Robinson's core service as a broker, the Court concludes that it is preempted.") (internal citations and quotations omitted); Ga. Nut Co., 2017 WL 4864857, at *3 ("Enforcing state negligence laws that would have a direct and substantial impact on the way in which freight brokers hire and oversee transportation companies would hinder this objective of the FAAAA[,]  . . . [which] does not allow courts to impute state-law derived rights into transportation agreements. . . ."); Volkova, 2018 WL 741441, at *3 ("[I]n

alleging that Robinson has failed to adequately and properly perform its primary service, the negligent hiring claim directly implicates how Robinson performs its central function of hiring motor carriers, which involves the transportation of property. Therefore, because enforcement of the claim would have a significant economic impact on the services Robinson provides, it is preempted.").

Nonetheless, Plaintiff argues that state law negligence claims stemming from traffic accidents are unrelated to the services of a broker, and, therefore, are outside the scope of Section 14501(c)(1). For support, Plaintiff relies upon Hentz v. Kimball Transportation, Inc., No: 6:18-cv-1327-Orl-31GJK, 2018 WL 5961732, *3–4 (M.D. Ga. Nov. 14, 2018), and Mann v. C.H. Robinson Worldwide, Inc., No. 7:16-cv-102, 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017).[8] (See doc. 41, pp. 12–13.). Unlike the case at hand, which involves the affirmative defense of ordinary preemption, these cases address "complete preemption." See Hentz, 2018 WL 5961732, at *2–4; Mann, 2017 WL 3191516, at *5–8. Plaintiff argues that "courts' analysis [sic] of the substantive content of the FAAAA and its provisions applies to both types of preemption." (Doc.

---

[8] Plaintiff also cites ADA cases which have held that tort claims against air carriers were not preempted because their connection to the air carriers' services was too tenuous. (Doc. 42, pp. 11–15). For example, Plaintiff cites Smith v. America West. Airlines, Inc., in which the Fifth Circuit held that the ADA did not preempt a passenger's claim against an airline for negligently "permitting a visibly deranged man to board" because it had "nothing to do either with the airlines' economic practices regarding boarding." 44 F.3d 344, 346–47 (5th Cir. 1995). Plaintiff also cites Charas v. Trans World Airlines, Inc., in which the Ninth Circuit Court of Appeals held that personal injury claims arising from the provision of in-flight amenities, such as beverage services and assisting passengers, were insufficiently connected to the "services" of air carriers to be preempted by the ADA. 160 F.3d at 1266. Plaintiff fails to explain how these cases—which have nothing to do with freight brokers and do not purport to define their services—prove that her claims against Total Quality are outside the scope of Section 14501(c)(1). In fact, the Ninth Circuit rejected a similar attempt to analogize ADA cases defining the term "service" to include negligent claims against brokers. See Miller, 976 F.3d at 1025 ("Nor are we persuaded by Miller's argument that the reasoning of [Charas] is applicable here. . . . [T]here is no tension between Charas's construction of the term 'service' and our conclusion that when brokers arrange for transportation by motor carrier, they perform a 'service' within the meaning of the FAAAA. Even assuming brokers offer services analogous to airline amenities, motor-carrier selection is plainly not such a service.").

41, p. 12.)  However, as the court in Hentz stressed, these concepts are distinct.  See Hentz, 2018 WL 5961732 at *2 ("[U]nlike ordinary preemption, complete preemption is a 'narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims.'") (quoting Geddes v. Am. Airlines, Inc., 321 9 F.3d 1349, 1353 (11th Cir. 2003)).  Thus, whether the FAAAA completely preempts tort claims against brokers has no bearing on whether Plaintiff's claims against Total Quality are within the scope of Section 14501(c)(1).  Indeed, contrary to Plaintiff's suggestion, both Hentz and Mann recognize that FAAAA preemption depends on the facts and nature of the plaintiff's claims.  See Hentz, 2018 WL 5961732 at *4 (agreeing that "a claim of damage to transported goods" asserted against a motor carrier is preempted by the FAAAA because it directly relates to its prices, routes, or services); Mann, 2017 WL 319516, at *7 ("[W]hether a claim relates to a 'price, route, or service[]' is an inquiry that can turn on the underlying facts of the specific causes of action.").  Based on the analysis of the allegations supporting Plaintiff's negligent hiring claim above, the Court finds that this claim, as alleged, relates to Total Quality's services and concerns the transportation of property.

Plaintiff also cites Ciotola v. Star Transportation & Trucking, LLC, a case from the United States District Court for the Middle District of Pennsylvania which similarly involved a negligent hiring claim asserted against a freight broker for failing "to exercise reasonable care in hiring, supervising, retaining, and entrusting" a motor carrier.  481 F. Supp. 3d at 388; (see doc. 41, p. 14.)  Ciotola held that the FAAAA does not preempt negligence claims against brokers because "Pennsylvania's common-law duty of ordinary care does not mention or target a motor carrier's prices, routes, or services."  481 F. Supp. 3d at 387–88.  In order to reach its conclusion, the court said that "Plaintiff's claims boil down to imposing a duty of ordinary and reasonable care upon [freight brokers]."  That is not the case here.  As stated above, Plaintiff alleges that Total Quality

breached duties owed by freight brokers—not the general public—which go beyond the duty to exercise reasonable care and relate directly to brokerage services.  (Doc. 27, pp. 11–15.)  For example, Count II states, "Total Quality . . . had an independent duty to investigate and only select and contract with safe and competent contractors and motor carriers to transport goods in interstate commerce, including the load in question being transported by Defendant Shingles and Hard to Stop at the time of the collision."  (Id. at p. 13.)  Furthermore, Plaintiff alleges that Total Quality failed "to verify and ensure that Shingles and/or Hard to Stop had minimum insurance coverage in compliance with federal law," a duty that significantly impacts a broker's prices and services.  (Id. at p. 15.); see Nat'l Union Fire Ins. Co., 2020 WL 11191833, at *3 ("[V]erification of liability insurance is related to the service provided by Defendant as a motor broker.").  These duties go beyond the common law duty of ordinary care, and, to the extent that they resemble the duties alleged in Ciotola, the Court concludes that it is an oversimplification to characterize them as such. Moreover, as Defendant points out, Ciotola, which is not binding on this Court, applied a multi-factor test from Bedoya v. American Eagle Express Inc., 914 F.3d 812, 820-21 (3d Cir. 2019), which has not been adopted by the Eleventh Circuit.  (See doc. 43, p. 9.)  Thus, the Court is not persuaded by its reasoning.

Based on the foregoing, the Court finds that Count II is within the scope of Section 14501(c)(1).

### (2)   The Safety Exception in Section 14501(c)(2) Is Inapplicable to Plaintiff's Negligent Hiring Claim.

Plaintiff argues that even if her negligent hiring claim is within the scope of Section 14501(c)(1), it is not preempted because it falls within the "safety regulation exception" in Section 14501(c)(2)(A).   (See doc. 41, pp. 15–17.)   Total Quality contends that the exception is inapplicable "based on the plain language of [Section 14501(c)(2)(A)] and based on standard

statutory construction principles." (Doc. 43, p. 11.) For the reasons stated below, the Court finds

that the exception is inapplicable to Plaintiff's negligent hiring claim.

>    a.    The "safety regulatory authority of a State" includes common-
>          law tort claims.

Section 14501(c)(2)(A) exempts "the safety regulatory authority of a State with respect to

motor vehicles" from Section 14501(c)(1)'s preemptive effects. 49 U.S.C. § 14501(c)(2)(A).

Neither the Supreme Court nor the Eleventh Circuit has addressed whether negligence claims

asserted against a freight broker are captured by this language, and district courts are split on this

question. Compare Loyd v. Salazar, 416 F. Supp. 3d 1290, 1299 (W.D. Okla. 2019) ("[A]

negligent hiring or brokering claim—even one alleging that a broker unreasonably selected an

unsafe motor carrier—only indirectly concerns the safety of the motor vehicles owned or operated

by the motor carrier."), with Creagan v. Wal-Mart Transp., LLC, 354 F. Supp. 3d 808, 814 (N.D.

Ohio 2018) ("Because the negligent hiring claim seeks to impose a duty on the service of the

broker rather than regulate motor vehicles, . . . this claim is not within the safety regulatory

authority of the state and the exception does not apply."). A primary area of disagreement among

courts is whether common law claims are part of a state's "safety regulatory authority." See Loyd,

416 F. Supp. 3d at 1299 ("[D]istrict courts have disagreed on whether a common law negligence

claim falls within a state's traditional police power over safety."). Some courts construe a state's

regulatory authority narrowly to exclude private tort actions. See e.g., Huntington Operating Corp.

v. Sybonney Exp., Inc., No. H-08-781, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010) ("Case

law interpreting [Section] 14501(c)(2)(A) refers solely to the ability of the several states to define

safety standards and insurance requirements. The exception is not read to permit a private right of

action.") (internal citations omitted). Others, such as Lopez v. Amazon Logistics, Inc., the case

upon which Plaintiff primarily relies, hold that common law claims constitute an exercise of a

state's regulatory authority, in part, because "common law claims exist by force of state authority." 458 F. Supp. 3d at 515; see Cruz Miguel Aguina Morales v. Redco Transp. Ltd., No. 5:14-cv-129, 2015 WL 9274068, at *3 (S.D. Tex. Dec. 21, 2015) ("[N]egligence claims can certainly fall within states' regulatory authority, because negligence is the common-law regulation of misconduct.").

The Court agrees with Lopez and other courts which have found that a state's "safety regulatory authority" includes private tort actions.  In City of Columbus v. Ours Garage & Workers Service, Inc., the Supreme Court stated that Congress's purpose in enacting Section 14501(c)(1)(2) was "to ensure that its preemption of States' economic authority over motor carriers of property, [Section] 14501(c)(1), [did] 'not restrict' the preexisting and traditional state police power over safety."  536 U.S. 424, 439 (2002).  "Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a critical component of the States' traditional ability to protect the health and safety of their citizens."  Desiano v. Warner-Lambert & Co., 467 F.3d 85, 86 (2d Cir. 2006) (internal quotations omitted).  Moreover, the text and structure of Section 14501(c) suggests that a state's "safety regulatory authority" captures more than just "regulations," as some courts have held.  See, e.g., Gillum, 2020 WL 444371, at *5 (finding that the exception was inapplicable to negligent hiring claim against a broker because the plaintiff failed to allege a violation of "any state regulation related to a motor vehicle").  Whereas the FAAAA's preemption provision applies to any "law, *regulation*, or other provision having the force and effect of law," 49 U.S.C. § 14501(c)(1) (emphasis added), the exception in Section 14501(c)(2)(A) applies more broadly to a state's "safety *regulatory authority*," id. § 14501(c)(2)(A) (emphasis added).  The Court presumes that this alteration was intentional and indicative of Congress's desire to preserve more than just a state's power to enact regulations with respect to motor vehicles.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 353 (2013)

("Congress' choice of words is presumed to be deliberate, so too are its structural choices."). Moreover, since the Supreme Court has broadly construed common law rules as "other provisions having the force and effect of law" eligible for preemption under Section 14501(c)(1), common sense dictates that common law claims *also* are captured by Section 14501(c)(2)(A)'s broader "safety regulatory authority" language. See Lopez, 458 F. Supp. 3d at 515 ("Supreme Court precedent suggests 'regulatory authority' can encompass more than regulations—specifically, that a state's 'regulatory authority' authorizes 'other provisions having the force and effect of law,' which includes common law claims.") (citing Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 569 U.S. 641, 650–51 (2013) ("The 'force and effect of law' language in [Section] 14501(c)(1) . . . targets . . . the State acting in a regulatory rather than proprietary mode.")); see also Miller, 976 F.3d at 1027 ("[I]f [Section 14501(c)(1)] . . . encompasses common-law claims, then surely 'the safety regulatory authority of a State' also includes at least some common-law claims.") (quoting Ginsberg, 572 U.S. at 284).

> **b.    Plaintiff's Negligent Hiring Claim is not "With Respect to Motor Vehicles."**

However, the fact that a state's safety regulatory authority includes common law claims does not end the matter. Section 14501(c)(2)(A) plainly applies only to the "safety regulatory authority of a State *with respect to motor vehicles*." 49 U.S.C. § 14501(c)(2)(A) (emphasis added). Indeed, the Supreme Court has stated that state regulations which are not "genuinely responsive to safety concerns garner[] no exemption from [Section] 14501(c)(1)'s preemption rule." Ours Garage, 536 U.S. at 442; see Galactic Towing, Inc. v. City of Miami Beach, 341 F.3d 1249, 1251–52 (11th Cir. 2003) (affirming the district court's ruling that a city ordinance was protected by the public safety exception because the record showed it was "genuinely responsive" to public safety concerns). Thus, Plaintiff's negligent hiring claim is exempt only if it concerns or is genuinely

responsive to motor vehicle safety.[9]  See Lopez, 458 F. Supp. at 515 ("Only claims plausibly related to safety and respecting motor vehicles will fit."); see also Finley, 2018 WL 5284616, at *6 ("[A] properly exercised police power over safety must also 'concern' motor vehicles.").

As set forth above in Discussion Section II.B.1, supra, Count II is based entirely upon Total Quality's alleged failure to properly vet Defendant Shingles and/or Hard to Stop before selecting either of them as the motor carrier for the shipment.  As such, it is too tenuously connected to motor vehicle safety to fall within Section 14501(c)(2)(A).  See Loyd, 416 F. Supp. 3d at 1300 ("[R]eading the safety exception to include a negligence claim like the one asserted here—alleging that AGS overlooked Salazar's 'conditional' rating as a motor carrier and selected an unsafe motor carrier that used incompetent or careless drivers and entrusted its vehicles to such drivers—would be an unwarranted extension of the exception to encompass a safety regulation concerning motor carriers rather than one concerning motor vehicles."); see also Creagan, 354 F. Supp. at 814 ("Because the negligent hiring claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles, . . . the exception does not apply."); Gillum, 2020 WL 444371, at *5 (rejecting argument that the public safety exception applied to tort claims against a broker, in part, because the broker "did not own or operate any motor vehicle subject to the state's regulatory authority").  Moreover, were the Court to hold that a negligence claim asserted against a broker for personal injuries stemming from an accident involving their chosen motor carrier was "with respect to motor vehicles," the public safety exception would "swallow [Section 14501(c)(1)'s broad] rule of preemption related to brokers' services."  Loyd, 416 F. Supp. 3d at

---

[9]  Tractor-trailers are "motor vehicles."  See 49 U.S.C. § 13102(16) ("The term 'motor vehicle' means a . . . tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation . . . .").

1299.  Therefore, the Court finds that the FAAAA preempts Plaintiff's negligent hiring claim.

Accordingly, Count II is **DISMISSED** with respect to Total Quality.

### III.    Punitive Damages and Attorneys' Fees

Defendant correctly argues that "because all of Plaintiff's negligence claims fail, so do

Plaintiff's derivative claims for punitive damages and attorneys' fees."  (Doc. 43, p. 18, n.10.)

Under Georgia law, claims for punitive damages under O.C.G.A § 51-12-5.1 and claims for

attorney's fees and expenses under O.C.G.A. § 13-6-11 require a valid underlying substantive

claim.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004) ("O.C.G.A.

Section 13–6–11[] requires an underlying claim.") (citing United Cos. Lending Corp. v. Peacock,

475 S.E.2d 601 (Ga. Ct. App. 1996)); Wood v. Archbold Med. Ctr., Inc., 738 F. Supp. 2d 1298,

1371 (M.D. Ga. 2010) ("Georgia courts have consistently recognized that a claim for punitive

damages is effective only if there is a valid claim for actual damages to which it could attach, and

that punitive damages may not be recovered if there is no entitlement to compensatory damages.")

(citing J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 449 (Ga. Ct. App. 2007)).

Because Plaintiff has failed to allege sufficient facts to state a claim in Counts I and III and because

Count II is preempted by the FAAAA, no substantive claims against Total Quality exist to which

the punitive damages and attorneys' fee claims can attach.  See Wood, 738 F. Supp. 2d at 1372

n.57 ("Like the punitive damages claim, the attorney's fees claim is barred as to the Hospital

Defendants, Physician Defendants, Defendant Beverly, and Defendant Simms because there is no

substantive claim to which it can attach.").  Accordingly, these claims (Counts V–VI) are

**DISMISSED** with respect to Total Quality.

## IV.    Remaining Defendants

While Total Quality's Motion to Dismiss has been pending, Plaintiff has reached separate settlements with Defendants Hard to Stop, Ronald Bernard Shingles, Great West Casualty Company, Scottsdale Insurance Company, and Owners Insurance Company.  (See docs. 62, 68.) On January 14, 2022, per request of the parties, the Court entered an Order establishing minor settlement trusts to help facilitate those settlements.  (Doc. 67.)  Accordingly, citing Federal Rule of Civil Procedure 19, Plaintiff filed a Consent Motion to Dismiss all Defendants other than Total Quality.  (Doc. 68.)  Specifically, Plaintiff moves to dismiss *without* prejudice Defendants Hard to Stop, Ronald Bernard Shingles, and Owners Insurance Company, and to dismiss *with* prejudice Defendants Great West Casualty Company, Scottsdale Insurance Company, Auto-Owners Insurance Company, and Auto-Owners Specialty Company.  (Id. at p. 2.)  The settling Defendants have consented to the proposed dismissals, and Total Quality Logistics has not filed any objection to the proposed dismissals.  (Id.)  Accordingly, the Court **GRANTS** Plaintiff's Consent Motion to Dismiss Multiple Defendants.  (Doc. 68.)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Total Quality's Motion to Dismiss, (doc. 35), and **DISMISSES** all claims asserted against Defendant Total Quality. Additionally, the Court **GRANTS** Plaintiff's Consent Motion to Dismiss Multiple Defendants, (doc. 68), and, accordingly, **DISMISSES without prejudice** Defendants Hard to Stop, Ronald Bernard Shingles, and Owners Insurance Company, and **DISMISSES with prejudice** Defendants Great West Casualty Company, Scottsdale Insurance Company, Auto-Owners Insurance Company, and Auto-Owners Specialty Company.  The Court, having disposed of all claims against

all parties, **DIRECTS** the Clerk of Court to **TERMINATE** this case and **ENTER** the appropriate

judgment of dismissal.

      **SO ORDERED** this 4th day of February, 2022.

 

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA